UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL C. TOMASINI, | No. 2:18-cv-3020 MCE CKD P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| JESSICA DUNCAN, et al., | |
| Defendants. | |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Plaintiff is proceeding on a claim for delay of medical care arising under the Eighth Amendment against Ashley Huggard, a Licensed Vocational Nurse employed at Mule Creek State Prison (Mule Creek). Defendant Huggard has filed a motion for summary judgment.

I. Request for Stay

In his opposition to defendant's motion for summary judgment, plaintiff asks that the court not rule on the motion until plaintiff receives the documents he requested from the California Department of Corrections and Rehabilitation (CDCR) via subpoena. On March 18, 2021, the court ordered CDCR to serve upon plaintiff some documents the court reviewed in camera pursuant to a motion to quash plaintiff's subpoena brought by CDCR. From a document

/////

1

filed by plaintiff on March 31, 2021, it appears that the documents were served, but plaintiff believes there are more responsive documents that CDCR is refusing to turn over to plaintiff.

There is nothing before the court suggesting that there are more documents CDCR is compelled to turn over. Furthermore, there is nothing suggesting that CDCR did not fully comply with the court's February 21, 2021 order as to CDCR's motion to quash and the March 18, 2021 order to turn over documents the court reviewed in camera. Accordingly, there is no cause to stay ruling on defendant's motion for summary judgment.

II. Plaintiff's Allegations

In his first amended complaint, which is signed under the penalty of perjury, plaintiff alleges as follows:

1. On March 3, 2018, plaintiff's urinary catheter became blocked. Plaintiff presented his issue to defendant around 9:30 a.m. and indicated his level of pain was increasing. Defendant "dismissed" plaintiff since his condition did not present an emergency and since medical staff was otherwise occupied.

2. Over the next few hours, the pain intensified greatly. Despite his pleas for help, defendant told plaintiff he would have to wait for treatment.

3. While plaintiff was on the prison yard, his pain level increased to the point where he was brought to tears for the first time since he was a child. Following a third plead for help, defendant enlisted a correctional officer to tell plaintiff to cease his pleas for help and the officer accused plaintiff of faking his symptoms.

4. Plaintiff was ultimately treated at the "triage and treatment" center and the complete blockage of his catheter was confirmed. Plaintiff's blood pressure was also elevated. The catheter was replaced which resulted in the discharge of 1200 ml of a mix of blood and urine.

III. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents,

1  electronically stored information, affidavits or declarations, stipulations (including those made for
2  purposes of the motion only), admissions, interrogatory answers, or other materials. . .'' Fed. R.
3  Civ. P. 56(c)(1)(A).

4  Summary judgment should be entered, after adequate time for discovery and upon motion,
5  against a party who fails to make a showing sufficient to establish the existence of an element
6  essential to that party's case, and on which that party will bear the burden of proof at trial. See
7  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an
8  essential element of the nonmoving party's case necessarily renders all other facts immaterial."
9  Id.

10  If the moving party meets its initial responsibility, the burden then shifts to the opposing
11  party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
12  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
13  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
14  of their pleadings but is required to tender evidence of specific facts in the form of affidavits,
15  and/or admissible discovery material, in support of its contention that the dispute exists or show
16  that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed.
17  R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the
18  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
19  governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,
20  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is
21  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
22  party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

23  In the endeavor to establish the existence of a factual dispute, the opposing party need not
24  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
25  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
26  trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
27  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
28  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

IV. Eighth Amendment Delay of Medical Care Standard

Delay of medical care can violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A violation occurs when a prison official causes injury as a result of his or her deliberate indifference to a prisoner's serious medical needs. Id.

A plaintiff can show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) citing Estelle, 429 U.S. at 104. "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) citing McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1991).

"Deliberate indifference" includes a purposeful act or failure to respond to a prisoner's pain or possible medical need. Jett, 439 F.3d at 1096.

Mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Where a prisoner alleges that delay of medical treatment evinces deliberate

indifference, the prisoner must show that the delay caused "significant harm and that defendants should have known this to be the case." Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); see McGuckin, 974 F.2d at 1060.

V. Defendant's Argument and Analysis

Defendant argues that there is not a genuine issue of material fact as to whether she was at least deliberately indifferent to plaintiff's serious medical needs. In her declaration, defendant indicates as follows:

1. She worked at Mule Creek on Saturday March 3, 2018, between 6:00 a.m. and 2:00 p.m. Her post was the "C Yard Med Pass[1]." Her duties were to distribute medication to inmates who lined up at her window at the "C Yard clinic." On Saturdays, the actual "C Yard clinic" was closed, only the meds pass windows were open. Defendant did not have immediate access to inmate medical records while working in the C Yard clinic in March 2018.

2. Mule Creek has a "Triage and Treatment Area facility" referred to as the "TTA" which is about a 5-minute walk from the C Yard clinic. On weekends, inmates who required urgent care were seen at the TTA. The capacity of the TTA is limited.

3. General population inmates were released from the building where they were housed to the C Yard. Once released, an inmate could visit the clinic. On the C Yard there are three "meds pass" windows with approximately 40 inmates in line at each window.

4. Inmates who wanted to be seen in the TTA on the weekend had the option of completing a call slip and depositing it in a box located outside of the clinic. If an inmate came to one of the med pass windows seeking medical care on the weekend, nurses had the discretion to either direct the inmate to fill out a call slip to be seen at the TTA, or the nurse could call the TTA directly and get an inmate on the list to be seen.

5. On weekends, if an inmate had an emergency while on the yard, he had the option of going "man down." When "man down" occurs, officers respond immediately and everything on the yard stops. An inmate who is man-down is seen almost immediately by medical staff.

---

[1] In her affidavit, defendant uses the terms "med pass" and "meds pass." The court references the terms as used by the defendant.

   6. On March 3, 2018, plaintiff approached defendant and the C Yard clinic meds window and reported a problem with his catheter. In response, defendant called the TTA to advise staff there of plaintiff's complaint and requested that plaintiff be triaged. The TTA staff advised they did not have space for plaintiff at the moment and that he should wait on the C yard until they were ready for him. Defendant could not replace the catheter from her position at the meds window as she did not have access to proper supplies or plaintiff's medical records.

   7. Later, plaintiff returned to the meds window and again asked to be seen. Defendant contacted the TTA once or twice more to get assistance for plaintiff. Eventually, TTA staff indicated they could see plaintiff and plaintiff was escorted to the TTA.

   The transcript of plaintiff's deposition was submitted by defendant in support of her motion for summary judgment. Defendant points to the following portions of plaintiff's testimony in support of her motion:

   1. On Saturday March 3, 2018, plaintiff became aware his catheter was blocked at about 7:30 a.m. Dep. Tran. at 14. The pain at that point was mild. Plaintiff believed he would have access to medical care around 9:00 a.m. when C Yard opened. Plaintiff knew he could endure the pain until 9:00 a.m. so he did not feel it appropriate to "call an emergency." Id. at 16-17. Plaintiff agreed that in an emergency situation he had the option of going "man down." Id. at 17.

   2. As indicated in his amended complaint, plaintiff first saw defendant at 9:30. a.m. Id. at 23. Plaintiff agreed with defendant that on a Saturday any treatment would be in the TTA and defendant called the TTA and reported plaintiff's situation. After speaking with TTA staff, defendant indicated to plaintiff that the TTA was busy and that plaintiff would have to wait for treatment. Id. at 23.

   3. Plaintiff went back to the meds window about 45 minutes later and indicated his pain was increasing. Defendant indicated the TTA was still busy. At this point, plaintiff began to walk "briskly" on the yard in hopes of dislodging the blockage in his catheter. Id. at 27.

   4. Then, plaintiff wandered around in front of the C Yard clinic for about an hour, "doubling over" in pain at times, when defendant informed plaintiff that they were ready for him at the TTA. Id. at 39. Plaintiff was escorted to the TTA by a correctional officer. It took about 5

minutes to get there. Id. at 40.

    5. Plaintiff was successfully treated at the TTA and there were no issues following treatment. Id. at 42-43.

Medical records provided by defendant indicate plaintiff arrived at the TTA around noon on March 3, 2018 and was in "moderate distress" when he arrived. ECF No. 80-5 at 23.

The court finds that there is a genuine issue of material fact as to whether plaintiff's blocked catheter amounted to a serious medical need thereby requiring medical attention under the Eighth Amendment. Plaintiff indicates the pain caused by the blockage brought him to tears and to "double over" in pain and it is clear based upon the evidence before the court that failure to treat plaintiff's condition could have resulted in unnecessary and wanton infliction of pain. The fact that plaintiff elected not to go "man down" does suggest that the pain plaintiff was suffering was not as bad has he indicates. However, the court cannot find that plaintiff was required to go "man down" in order to be entitled to medical care under the Eight Amendment as a matter of law. The Eighth amendment protects serious medical needs, not simply emergent or life-threatening ones.

Nonetheless, the court also finds that there is no genuine issue of material fact as to whether defendant was indifferent to plaintiff's problems with his catheter. Defendant explained that she could not change the catheter herself and that her only option was to seek treatment for plaintiff in the TTA. She did that, and eventually plaintiff was seen when TTA staff indicated there was room to care for plaintiff. Furthermore, defendant was aware that plaintiff had the option to go "man down" and defendant never interfered with his ability to do so. Plaintiff chose not to go that route.

VI. Conclusion

Because there is not a genuine issue of material fact as to whether defendant was indifferent to plaintiff's blocked catheter, defendant is entitled to summary judgment. This being the case, the court need not address the other arguments raised in defendant's motion for summary judgment.

////

Accordingly, IT IS HEREBY recommended that:

1. Plaintiff's request that the court stay ruling on defendant's motion for summary judgment be denied;

2. Defendants' motion for summary judgment (ECF No. 80) be granted; and

3. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 20, 2022

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
toma3020.msj